# In the United States Court of Federal Claims

No. 14-284C
(Filed: January 12, 2016)
FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **LARRY HOLMBERG,** | * |
| | * |
| | * |
| Plaintiff, | * |
| | * Claim Construction; *Markman v. Westview* |
| | * *Instruments, Inc.*, 517 U.S. 370 (1996); |
| v. | * *Phillips v. AWH Corp.*, 415 F.3d 1303 |
| | * (Fed. Cir. 2005) |
| **THE UNITED STATES,** | * |
| | * |
| Defendant, | * |
| | * |
| and | * |
| | * |
| **L-3 COMMUNICATIONS CORP**. | * |
| | * |
| .          Third-Party Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER AND OPINION ON CLAIM CONSTRUCTION

**DAMICH**, Senior Judge

This case arises out of Plaintiff Larry Holmberg's allegation that Defendant, the United States, has violated 28 U.S.C. § 1498 through the use or manufacture of the invention described in United States Patent Nos. 6,988,332 ("the 331 patent") and 7,100,321 ("the 321 patent"). Specifically, the alleged violation arises from Defendant's use of an allegedly infringing product produced by Third-Party Defendant L-3 Communications Corp. ("L-3"). Both patents are entitled "Range Finder" and relate to a device that can be mounted to a firearm that includes a display which conveys to the user the distance of a target. This matter is presently before the Court on the parties' briefs regarding claim construction, which include third-Party Defendant L-3's argument that claims 12 and 1 of the '321 Patent are indefinite. A claim construction hearing was held on September 16, 2015, where the Court considered the parties' arguments with respect to the intrinsic and extrinsic evidence. The Court decided that expert testimony was not necessary, and the parties did not present expert witnesses.

After fully considering the parties' arguments, the Court's interpretation of the disputed claim terms and phrases follows.

## I.      The Patented Technology

### a. '331 Patent

The '331 patent teaches a range finder where the range finder is mounted to a weapon. A portion of the display of the range finder is positioned in front of a portion of the scope on a firearm. The range finder calculates the distance of a target and then displays that distance to the user through the optics of the scope, allowing the user to ascertain the distance of the target while still viewing it through the scope. The following picture from the '331 patent illustrates this method – 202 is a liquid crystal display ("LCD") screen, 204 is the indicia of the distance of a target, and 806 is the end of a scope:



### b. '321 Patent

The '321 Patent also teaches a range finder. The '321 Patent is a continuation of the application which became the '331 Patent. Both patents have the same specification and the same drawings. For the purposes of the instant claim construction, there is no substantive difference between the two patents beyond noting which claims came from which patent.[1]

---

[1] Both patents in their summaries state that the embodiments are "a method" of "using" or "operating" a range finder. The '321 patent, however, claims "[a] range finder comprising. . ." while the '331 patent claims "[a] method of using a rangefinder." '321 Patent, col. 1 ll. 55 & 62; col 6, 9; '331 Patent, col. 1 ll. 44 & 52; col 6 ll. 15.

## II.        Claim Construction – Legal Standard

Claim construction is a question of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-391 (1996).  When the trial court uses only intrinsic evidence (such as the patent claims and specification, and the patent prosecution history) to construe patent claims, "the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction *de novo*."  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 841 (2015).  When the trial court utilizes extrinsic evidence to resolve a "subsidiary factual dispute that helps the court determine the proper interpretation of the written patent claim," the Court of Appeals will accept the district court's finding unless it was "clearly erroneous."  *Id*. at 841-843.  Claim construction is not subject to a burden of proof or evidentiary burden.  *E.g. Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.2d 801, 807 (Fed. Cir. 2002).

Generally, a trial court need not construe claim terms whose meaning the parties do not dispute.  *E.g. O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2006).  Further, a court construing patent claim terms need not adopt the constructions proposed by the parties, and should determine its own constructions if it determines the parties' proposals to be legally flawed.  *E.g. Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1323-24 (Fed. Cir. 2008).  *But see Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir. 2006) ("While we may have the authority to adopt claim constructions which have not been proposed by either party we should be hesitant to do so.").  The disputed claim terms need only be construed sufficiently to resolve the particular issues in the case at hand.  *E.g. Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation and internal quotation marks omitted).  Accordingly, "[c]laim construction begins and ends in all cases with the actual words of the claim."  *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (citation and internal quotation marks omitted).  However, claim terms should not be construed one way during prosecution and another way during claim construction in litigation.  *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005).

As a general matter, "[w]hether a term appearing in a patent claim is subject to limitations beyond its [ordinary] meaning is determined in the context of the invention described in the specification, the prosecution history, and the prior art."  *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1326 (Fed. Cir. 2014); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002) ("[C]laim terms take on their ordinary and accustomed meanings unless the patentee demonstrated [in the intrinsic evidence] an intent to deviate from the ordinary and accustomed meaning . . ."); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003) ("[T]o determine claim meaning, a court immerses itself in the specification, the prior art, and other evidence, such as the

understanding of skilled artisans at the time of the invention, to discern the context and normal usage of the words in the patent claim.").

To sufficiently construe the disputed claim terms, the level of ordinary skill in the relevant art must first be determined. *E.g. Phillips*, 415 F.3d 1303. After the person of ordinary skill in the art is defined, intrinsic evidence such as the patent specification and file history is considered in order to construe the disputed terms. *Id.* If intrinsic evidence is not sufficient to construe the disputed terms, extrinsic evidence such as dictionary definitions and prior art is considered. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).

### III. Person of Ordinary Skill in the Art (POSA)

The Government argued that the POSA would have "a degree in electrical engineering, optics, or physics, and two to three years of work experience in the art." Defendant's Brief at 21 ("Def.'s Brief"). Plaintiff pointed out that the Government's definition of the POSA was so strict as to exclude the inventor and that the invention was not directed to the inner-workings of the rangefinder. Pl.'s Reply at 2. Instead, the Plaintiff argued that the POSA, like the inventor, need only have "several years of experience as a sniper in the Army." *Id.* Third-Party Defendant, L-3 defines POSA as "one who would have had a degree in electrical engineering, optics, or physics, and 2 - 3 years of work experience in the field of the invention (rangefinders and weapons scopes). Ex. 1, Schwartz, ¶10." Third-Party Defendant's Response ("3PD Response") at 8 fn6. Additionally, L-3 defines POSA as "a hypothetical person who is presumed to have known the relevant art at the time of the invention." *Id*. at 45 fn18.

The terms to be construed are words commonly used in the English language. It is not evident to the Court that they have any particular, specialized meaning to a POSA of any of the above definitions. Thus, the Court declined to hear expert testimony. As the Federal Circuit has noted:

> In some cases, the ordinary meaning of claim language as understood by a person or ordinary skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.

*Phillips*, 415 F.3d at 1314.

The Court intends to proceed in this fashion.

**IV.     Discussion**

The parties have asked the Court for claim construction on four separate terms appearing in the '331 and '321 patents: "scope," "displaying," "viewable," and "readable."  The Court will address these terms in order.

A.   "Scope"

The term "scope" appears in asserted claims 1 and 2 of the '331 patent and asserted claims 1 and 12 of the '321 patent.  Plaintiff argues that the term "scope" is a generic term which requires no construction and should be ascribed its plain and ordinary meaning, which is "viewing instrument."  Plaintiff's Claim Construction Brief ("Pl.'s Brief") at 3.  Defendant and Third-Party Defendant disagree and argue that the "scope" should be defined as a shortened version of the word "telescope," i.e., an optical instrument with magnification properties.

Claim 1 of the '331 patent reads:

A method of using a range finder, the method comprising: coupling the range finder to a weapon having an associated scope, the range finder and the scope being physically separate operating devices; positioning at least part of a display of the range finder in front of a select portion of the associated scope; activating the range finder; determining the distance to a target; and displaying the distance to the target through the optics of the scope.

'331 Patent, col. 6 ll. 15-26.  Claim 2 reads "The method of claim 1, further comprising: displaying the distance to the target outside the optics of the scope." *Id.* at col. 6 ll. 27-29.

Similarly, claim 1 of the '321 patent reads "A range finder comprising: a range finder circuit; a display electrically connected to the range finder circuit; and a mounting structure to mount the range finder to a firearm such that a portion of the display is viewable through [sic] scope coupled to the firearm."  '321 Patent, col. 6 ll. 9-15.  Claim 12 reads "A range finder comprising; a range finder circuit; a display electrically coupled to the range finder circuit; the display positioned such that a displayed distance is readable through an existing scope mounted to a weapon." *Id.* at col. 6 ll. 52-59.

For the reasons set forth below, the Court will adopt Plaintiff's construction of the term "scope" as meaning "a viewing instrument."

*a.       The Claim Term Read in Light of the Specification*

The starting point in claim interpretation is the ordinary and customary meaning of the claim. ("We have frequently stated that the words of a claim are generally given

their ordinary and customary meaning.'' *Phillips*, 415 F.3d at 1312 (internal quotation and citations omitted)).  But a claim is to be construed in light of the specification.  (''[I]t is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention.'' *Id.* at 1316 (internal quotation and citation omitted)).

        After reviewing the patents-in-suit, the Court concludes that there is nothing in the patents to show that Holmberg intended the term "scope" to be a shortened version of the word "telescope."  As Plaintiff astutely points out, while the patents-in-suit contain numerous uses of the "scope," "telescope" is only used once in each patent – at the beginning when referring to prior art.  Pl.'s Brief at 7.  Thus, from looking at the patents-in-suit, it does not appear that Holmberg intended to act as his own lexicographer and define "scope" to mean "telescope" or to imply any requirement of magnification.

        b.        *Dictionary Definitions*

        A review of the proffered dictionary definitions sheds light on the ordinary and customary meaning of "scope."  All three parties cite to the Merriam-Webster Collegiate Dictionary, although for different editions, namely, 2000, 2001, and 2003.  Tellingly, the core definition of all three editions is "an instrument for viewing." *Merriam-Webster's Collegiate Dictionary* (10th ed. 2000); *Merriam-Webster's Collegiate Dictionary* (10th ed. 2001); *Merriam–Webster's Collegiate Dictionary* (11th ed. 2003).  Furthermore, each of these definitions gives examples of various kinds of scopes, namely, "telescope," "radarscope," "microscope."  Before giving the set of examples, each definition inserts "as."  For example, the 2001 edition (cited by the Government) states: "an instrument (as a telescope or radarscope) for viewing."  Def.'s Response at 25 (quoting *Merriam-Webster's Collegiate Dictionary* (10th ed. 2001)). Thus, "scope" is the genus, and the examples are species.  In other words, a telescope is a kind of scope.  This external evidence bolsters the Court's conclusion that the specification does not indicate that the term "scope" in the claims means "telescope."  ("Within the class of extrinsic evidence, the court has observed that dictionaries and treatises can be useful in claim construction." Phillips, 415 F.3d at 1312 (internal citations omitted)).

        c.        *The phrase "optically adapt" is not limited to reversing magnification.*

        The only argument contra that gives this Court pause is the reference in the '331 patent to "optically adapted," which—at least initially--suggests magnification, as in a telescope.  Specifically, Defendant and Third-Party Defendant argue that because the specification of the '331 patent states that indicia displayed on the screen of the device "is optically adapted so the user can read the conveyed distance through the scope," this must mean that "scope" is to be understood as meaning "telescope."  Def.'s Response at 22.  It is argued that the adaptation is required because "the scope has magnification, and the display of the range finder located in front of the scope is in a different depth of field than the intended target" and that "without the optical adaptation described in the specification, the indicia of the display would be out of focus." *Id.* at 23.  *See also* 3PD Response at 14 ("In order to 'reverse' the magnification of the scope, the patent

6

specification discloses that the rangefinder display is 'optically adapted' so that the conveyed distance to the target can be read through the scope by the user.").

       The Court holds that both Defendants' argument must fail because there is nothing in the patent specification that compels the conclusion that "optically adapt" would be synonymous with reversing magnification in this instance. "Optically adapt" is a vague term which, as Plaintiff notes, could mean that the indicia is visually adapted in the context of the two patents, including the size and orientation of the indicia rather than only the magnification. Pl.'s Reply at 9-10. Thus, the Court is not persuaded that "optically adapt" should be read as narrowly as Defendants would like. To do so would be to read limitations from a preferred embodiment into the claims, a practice warned against by the Federal Circuit. *See Phillips*, 415 F.3d at 1320 (noting that reading a limitation from the written description into the claims is "one of the cardinal sins of patent law").

          d.      *Holmberg's references to prior art and the prosecution history does not limit the term "scope" to mean "telescope."*

       Defendant's and Third Party Defendant's arguments about prior art must also fail. Defendant's argument begins with an interpretation of the background section of the '331 patent:

>        Range finders can be a useful tool when hunting for game. A ranger [sic] finder conveys the distance to an object (game target). This information is helpful to a hunter because it allows a hunter to determine if the target is beyond the range of a firearm or bow. Knowing the distance to a target also aids the hunter in the placement of the sight of the firearm or bow. For example, if the target is a great distance from a firearm, a hunter can raise the sight of the firearm over the target a select distance to compensate for the trajectory of a projectile (bullet) fired from the firearm. The distance found by the range finder can aid the hunter in determining how much the sight should be raised over the target.

'331 Patent, Gov. Ex. 1 at A13, col. 1 ll. 16-27.

       Defendant sees in this passage an implication that range finders are used in situations where the hunter is far away from the target. Defendant also notes that the background section distinguishes the invention from "telescopes incorporating range finder circuits [that] are generally heavy bulky and expensive to purchase." '331 Patent, Gov. Ex. 1 at A13, col. 1 ll. 28-32. Defendant concludes that "[g]iven these statements about the prior art in the specification, the claim term 'scope' should be construed to mean an optical instrument having magnification properties." Def.'s Response at 22.

       Defendant further argues that its proposed construction is consistent with the prosecution history of the '331 Patent. Initially, the USPTO examiner rejected

Holmberg's application under 35 U.S.C. § 102(b) "as being clearly anticipated by Lorey et al." *Id.* at 23 (referencing U.S. Patent No. 4,993,833 ("the '833 Patent" or "the Lorey patent.")  Indeed, the language – "telescopes incorporating rangefinders [sic] circuits are generally heavy, bulky and expensive to purchase" – is taken from Holmberg's response to the USPTO rejection of his patent.  *Id.*

Third-Party Defendant also keys in on this language, arguing that it is customary to use the long form of a word before subsequently abbreviating it – in this case, the word "telescope" was used in the background section before the term "scope" was used subsequently throughout the patent; thus, it is argued that Holmberg understood that his device contemplated only telescopes and each subsequent use of "scope" should be interpreted to mean "telescope."  3PD Response at 18.

While it is true that in his response to the rejection over the Lorey reference, Holmberg noted that the invention taught in the '331 Patent was an upgrade over Lorey (a patent which clearly anticipates a telescopic scope on a firearm), that does not mean, as Defendants' would like to believe, that Holmberg specifically equated scopes and telescopes during prosecution.  As Plaintiff correctly argues, the cited prior art provides no basis for excluding non-magnifying scopes from the construction of "scope."  Pl.'s Reply at 19.  Holmberg was placed in the position of having to differentiate his invention from the prior art, which just happened to relate to a telescopic sight.  This does not mean that Holmberg intended to limit the term "scope" in his patents to mean the same thing as "telescope" in the Lorey patent.  Indeed, the bone of contention between the applicant and the examiner over the Lorey reference was whether the range finder was integrated with the scope or separate from it.  It was not whether either "scope" had magnification properties.

e.    *POSA would not understand the term scope" to only refer to devices with magnification properties.*

Finally, the Court does not believe that a POSA would, when dealing with devices to be attached to firearms, that "scope" must always mean "telescope."  This position is supported by the unequivocal fact that several different types of sighting devices exist to be coupled to firearms.  One such device is certainly a telescopic sight (which can either be a fixed magnification or of a variable magnification).  Pl.'s Brief at 11; Def.'s Response at 27.  However, another such device is what Plaintiff refers to as a 1x Riflescope – namely a sighting device which offers no magnification properties.  Although such devices may not be as common as telescopic sights, they undoubtedly exist and in fact are used by the military because they offer specific advantages that a telescope would not.  Pl.'s Brief at 18; Transcript of Oral Argument at 9 (October 1, 2015) ECF No. 61.  A 1x Riflescope, for example, allows a user to focus on a target with one eye while allowing the user to keep his or her other eye open to survey the surroundings, which can be useful in close combat situations.

Moreover, given the plain and ordinary meaning of "scope," if POSA were asked whether or not a weapon had a "scope" coupled to it, it is unlikely that that person would

check the device for magnification properties before being able to answer.  Rather, that person would likely see that a viewing device was coupled to the weapon and answer in the affirmative that a scope was attached to the weapon, regardless of whether the device had magnification properties.  Furthermore, some sights feature a variable zoom, starting at 1x (no magnification) but allowing the user to adjust the sight such that it becomes a telescopic sight.  In this instance, the device can be both a 1x Riflescope or a telescopic sight, depending on the preference of the user.  Accordingly, a POSA would not define "scope" to solely refer to devices with magnification capabilities.

The Court thus agrees with Plaintiff's proposed construction that "scope" should be defined as a "viewing instrument."

B.   "Displaying," "Viewable," and "Readable"

The parties also dispute the meaning of three additional terms "displaying," "viewable," and "readable."  The phrase "**displaying** the distance to the target through optics of the scope" appears in claim 1 of the '331 patent (emphasis added).   The phrase "a portion of the display is **viewable** through a scope coupled to the firearm" appears in claim 1 of the '321 patent (emphasis added).  The phrase "the display positioned such that a displayed distance is **readable** through an existing scope mounted to a weapon" appears in claim 12 of the '321 patent (emphasis added).  The proposed construction of the parties is as follows:

| "Displaying the distance to the target through the optics of the scope" ('331 Patent, claim 1) | | |
|---|---|---|
| Holmberg's Construction | United States' Construction | L-3's Construction |
| No construction is necessary. The plain and ordinary meaning of the term "displaying" (*i.e.* "showing") should apply so the full phrase is "showing the distance to the target through the optics of the scope." | Plain and ordinary meaning, which is the measured distance appearing on the display of the rangefinder is able to be read by the user while looking through the scope. | Conveying the distance to a target such that it is readable through a scope |

| "a portion of the display is viewable through the scope coupled to the firearm" ('321 Patent, claim 1) | | |
|---|---|---|
| Holmberg's Construction | United States' Construction | L-3's Construction |
| No construction is necessary. The plain and ordinary meaning of the term "viewable" (*i.e.* "capable of being viewed") should apply so the full phrase is "a portion of the display is capable of being viewed through the scope coupled to the firearm." | Plain and ordinary meaning, which is the measured distance appearing on the display of the rangefinder is able to be read by the user while looking through the scope. | The claim term is indefinite:<br><br>Alternatively:<br>a portion of the display conveying the distance to a target is readable through a scope mounted to the firearm |

| "The display positioned such that a displayed distance is readable through an existing scope mounted to a weapon" ('321 Patent, claim 12) | | |
|---|---|---|
| Holmberg's Construction | United States' Construction | L-3's Construction |
| No construction is necessary. The plain and ordinary meaning of the term "readable" (*i.e.* "capable of being read") should apply so the full phrase is "the display positioned such that a displayed distance is capable of being read through an existing scope mounted to a weapon." | Plain and ordinary meaning, which is the measured distance appearing on the display of the rangefinder is able to be read by the user while looking through the scope. | The claim term is indefinite.<br><br>Alternatively:<br>L-3 agrees with the government's construction. |

The fundamental disagreement between the parties is that Defendant argues that the three terms should all be ascribed the same definition while Plaintiff argues that all three phrases should be ascribed separate meanings as they are three distinct phrases. Additionally, as will be discussed *infra*, Third-Party Defendant believes that two of the claims are indefinite.

Defendant argues that their constructions are based on the claim phrases in their entirety rather than words in isolation, and cites to *Phillips* and *Hockerson-Halberstadt, Inc. v. Converse, Inc.*, 183 F.3d 1369 (Fed. Cir. 1999) for the proposition that claim construction should interpret the entire claim in context, rather than a single element in isolation. Def.'s Response at 32-33. In essence, Defendant believes that Plaintiff's proposed construction goes against the actual purpose of the invention – that is, to allow a

user to know the distance of a target.  It is argued that if Plaintiff's construction is allowed, it would lead to an embodiment of the invention where it would be possible for a user to "view" the indicia but not be able to "read" it, which Defendant argues is antithetical to the intention.

The Court agrees with Plaintiff that the terms should be ascribed their plain and ordinary meanings.  There is a "general presumption that different terms have different meanings" in the claims of a patent.  *Chicago Board Options Ex., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1379 (Fed. Cir. 2012) (citing *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)).  "Display," "view," and "read" are three different words which should have three different definitions, especially considering the claims in which they are found are not three identical claims. For example, claim 1 of the '321 patent does not speak at all to a distance being viewable – rather, all that it specifies is that a portion of the display (i.e., the LCD screen itself) is capable of being viewed through the scope.  This claim is silent as to the display of a target distance, thus there is no reason to read the distance display into this claim as Defendant seems to suggest should be done.  There is no evidence to suggest that Holmberg intended for all three terms to have the same meaning when writing them.

Accordingly, the Court will adopt Plaintiff's proposed construction of the terms "displaying," "viewable," and "readable."

C.  Indefiniteness

Third-Party Defendant L-3 also argues that the claims 12 and 1 of the '321 Patent are indefinite because they claim multiple statutory classes – an apparatus and a method of using an apparatus.[2]  L-3 cites to *IPXL Holdings, LLC v. Amazon.com, Inc.* for the proposition that when a patent claim attempts to claim multiple statutory classes under 35 U.S.C. § 101, a patent claim can be found indefinite.  430 F.3d 1377, 1384 (Fed. Cir. 2005).  L-3 argues that because both claims require a particular use of the range finder in order for there to be infringement, L-3 has no way of knowing whether the product it is selling to the government infringes Holmberg's patents because infringement does not occur until a range finder is put into a particular configuration.  3PD Response at 38.  For the reasons set forth below, L-3's arguments must fail.

In *Microsoft Corp. v. i4i Ltd. P'ship,* the Supreme Court held, in affirming the Federal Circuit, that invalidity required proof by clear and convincing evidence.  131 S. Ct. 2238, 2243 (2011) ("In asserting an invalidity defense, an alleged infringer must contend with the first paragraph of § 282, which provides that '[a] patent shall be presumed valid' and '[t]he burden of establishing invalidity . . . rest[s] on the party asserting such invalidity.'  Under the Federal Circuit's reading of § 282, a defendant seeking to overcome this presumption must persuade the factfinder of its invalidity defense by clear and convincing evidence.") (internal citations omitted).

---

[2] This argument is unique to Third-Party Defendant – the Government does not mention indefiniteness in its claim construction brief.

L-3 first contends that Claim 12 of the '321 Patent claims both an apparatus and a method because the limitation stating "the display positioned such that a displayed distance is readable through an existing scope mounted to a weapon" requires a particular use of the range finder by the operator.  3PD Response at 39.  However, L-3's argument is unavailing because the claim does not speak to a method of using the range finder.  The limitation is a structural limitation – it speaks to where the display is positioned.  It does not actually require that someone read the distance through the scope (i.e., if the limitation stated that the display is positioned such that a displayed distance is read by the user through the scope).  As a structural limitation, it only describes how the range finder is constructed, not how an individual has to use it.

L-3's argument about Claim 1 of the '321 Patent fails for the same reasons as above.  The limitation "a mounting structure to mount the range finder to a firearm such that a portion of the display is viewable through the scope coupled to the firearm" is also a structural limitation.  It is not requiring a user to mount the range finder to a firearm, it is saying that there must be part of the range finder that allows for it to be mounted to a firearm.  Holmberg is not claiming a method such as "mounting the range finder to a firearm."

Contrary to L-3's arguments, it would not be impossible for someone to know whether a different range finder might infringe the patents-in-suit.  For example, Claim 1 of the '321 Patent would be infringed if a range finder had a mounting structure that allowed it to be mounted to a firearm such that part of the display covers the scope.  Claim 1 would not be infringed by a range finder which allowed for mounting on a firearm where no part of the display covered the scope.

The Court thus holds that L-3's arguments fail to meet the clear and convincing standard in order to find a claim indefinite.  The noted claims are structural limitations of the range finder and not method claims.

## V.      Conclusion

The disputed terms of the '331 and '321 patents have been interpreted by the Court in this opinion and order.  The Court will adopt the Plaintiff's proposed construction on all disputed terms.  Additionally, the Court holds that claims 12 and 1 of the '321 patent are not invalid due to indefiniteness.

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge

12